## HANSEN v. UNITED STATES.
### No. 4988.

Circuit Court of Appeals, Seventh Circuit.
Nov. 17, 1933.

BARNES, District Judge, dissenting.

Edward H. S. Martin, of Chicago, Ill., for appellant.

Dwight H. Green, U. S. Atty., and Francis J. Kennedy, Asst. U. S. Atty., both of Chicago, Ill., and H. R. Pool, Chief Atty., Veterans' Administration, and E. G. Cromer, Atty., Veterans' Administration, both of Hines, Ill., for the United States.

Before ALSCHULER and SPARKS, Circuit Judges, and BARNES, District Judge.

SPARKS, Circuit Judge.

■ An opinion was written by the court, in which the question of jurisdiction was very carefully considered, and we think it would serve no good purpose for us to restate the propositions there decided upon. We therefore incorporate that opinion as a part of our own:

"It is first necessary to determine a question upon which the jurisdiction of this court depends. In other words, it is necessary to determine whether there has been a 'disagreement as to claim under a contract of insurance between the bureau and any person or persons claiming thereunder' for it is well settled that a disagreement between the bureau and the claimant as to the validity of the claim is essential to the claimant's right to bring an action thereon. Griffin v. United States (C. C. A.) 60 F.(2d) 339; Kelley v. United States (D. C.) 59 F.(2d) 743; Taylor v. United States (D. C.) 57 F.(2d) 331; Mara v. United States (D. C.) 54 F.(2d) 397; Smith v. United States (D. C.) 56 F.(2d) 636.

"Section 445, 38 USCA, provides for the bringing of actions against the United States in the United States District Court in the district in which the claimant or any one of them resides. The first clause of the first sentence provides: 'In the event of disagreement as to claim under a contract of insurance between the bureau and any person claiming thereunder an action on the claim may be brought against the United States. * * *' This act was passed June 7, 1924, § 19, and was amended March 4, 1925, § 2, and has been recently amended on May 29, 1928, § 1, and July 3, 1930, § 4. For the last amendment see 38 USCA § 445.

"It is the last paragraph of the last amendment which defines the words 'claim' and 'disagreement.' The latter term, 'disagreement' means the 'denial of the claim by the director or some one acting in his name on an appeal to the director.'

"In the rather careful opinion in Andy Anderson v. United States, 5 F. Supp. 269, decided by the United States District Court for the Eastern District of Kentucky on December 17, 1932, it is held that there can not be a disagreement since this amendment was adopted until the claimant has exhausted his remedy by appeal. Prior to this time the Solicitor General and the courts had held that the claimant could bring his action in the District Court without taking an appeal.

"An examination of the dates in the instant case is interesting as showing that this appeal was taken before the amendment above alluded to was made. It appears that on June 13, 1929, a decision was rendered upon the claimant's claim. On June 17, 1929, an appeal was taken from that decision. On June 25, 1929, the department recognized the appeal and sent the papers to the appellant board. On June 28, 1929, the instant action was begun. The Andy Anderson Case, supra, in addition to holding that the claimant, after the amendment was enacted, was required to prosecute his appeal, held as follows:

" 'The taking of the appeal from the denial annulled its operative effect as a basis for bringing the action, if it otherwise existed. This is evident from the fact that the limitation on the time in which suit might be brought after final denial, would begin to run not from the denial of July 3, 1929, communicated July 15, 1929, but from the denial on the appeal. There is nothing in the opinion of the Solicitor General, quoted above, justifying the position plaintiff could both appeal and sue. What he held was that the claimant need not appeal but might sue without further dealing with the Bureau.'

"Conceding for the purpose of the argument that since the amendment the claimant must exhaust his remedy by appeal, the question remains, what was the effect of an appeal by the claimant before the amendment. Undoubtedly it was recognized as the claimant's right to bring suit after his claim had been disallowed. He was not required to appeal. But having appealed, can he still maintain that there was a disagreement?

"It would seem to me that a fair construction of the word 'disagreement' contemplated final termination of the action by the claimant before the bureau. If a claimant has his claim denied by the bureau he may ask for the privilege of submitting evidence. If his request is granted, it can not be said that the proceedings have reached that stage where there is a disagreement. Likewise, if the claimant sees fit to appeal from the ruling of an inferior trier in the bureau to the head of the department, the stage in the proceedings has not been reached where it can be said that there is a disagreement.

"Moreover, it seems to me inconsistent with the grant of jurisdiction to the District Court to hear an action against the United States where there has been a disagreement in the matter of a claim, that such action might be co-pending with the appeal to an administrative officer. It seems fair to hold that the remedy by action in the District Court is to be pursued only after claimant has filed his claim with the bureau and has received an adverse ruling thereon. While appeal was not necessary under the act as it existed before the amendment, there must have been a termination of the attempted redress by the claimant in the bureau.

"It follows from what has been said, that upon the facts disclosed in this case, the court must hold that it is without jurisdiction and the plaintiff's case is dismissed."

It is further contended by appellant that the filing of the complaint in the District Court operated as an abandonment of his appeal to the Central Board of Appeals. With this contention we do not agree. If appellant had intended that to be the result of the filing of this complaint, he could easily have avoided any doubt with respect thereto by dismissing his appeal to the Central Board. This he did not choose to do, and under the circumstances we think he can not be considered as having abandoned his appeal to the Central Board.

We are of the opinion that it was neither the express nor implied intention of Congress that appellant should have the right to maintain two actions at the same time, for the same purpose, and against the same party, and in order to prevent such a situation we think the District Court properly construed the statute involved.

Judgment affirmed.

BARNES, District Judge (dissenting).

I disagree with the majority of the court, and, since this case is determinative of a large number (I am told not less than 100) of cases pending in the District Court for the Northern District of Illinois, am impelled to express my views.

This is an appeal from a judgment dismissing the plaintiff's suit for want of jurisdiction rendered in a suit brought to recover

total permanent disability benefits under a war risk insurance certificate.

On April 6, 1929, plaintiff's claim was made in writing to the regional office of the United States Veterans' Bureau at Milwaukee, Wis. On June 13, 1929, the regional manager of the bureau, at Milwaukee, wrote the claimant denying his claim, and said: "This letter is accordingly evidence of a disagreement under section 19 of the World War Veterans' Act, 1924, as amended."

On June 17, 1929, claimant wrote to the regional office, expressing dissatisfaction with the action of that office, and appealing to the Central Board of Appeals. On June 25, 1929, the regional adjudication officer of the office of the regional manager wrote claimant, acknowledging receipt of his letter of June 17, 1929, and stating that claimant's case file was on that date being referred to the Central Board of Appeals for further consideration, and that, in event of an adverse decision of that body, claimant would have the privilege of appealing to the director. The record is silent as to what, if anything, further was done in the bureau. On June 28, 1929, claimant filed his petition in the District Court.

It is the contention of the government that the denial of claimant's claim, mentioned in the regional manager's letter of June 13, 1929, did not constitute a disagreement between the claimant and the bureau which was sufficient to give the court jurisdiction of the suit, and that, even though said letter did in itself constitute a disagreement sufficient for the purpose aforesaid, the effect of such disagreement was destroyed by the action of the claimant in appealing to the Central Board of Appeals before the institution of suit.

While there was a time when it was doubtful, under the statutes in force prior to July 3, 1930, whether a denial by a subordinate board or officer in the bureau of the claim of a veteran could be made the basis for an action in the District Court [see U. S. v. Burleyson (C. C. A. 9) 44 F.(2d) 502], it is now well settled that under the statutes in force prior to July 3, 1930, a denial of a veteran's claim by a regional office of the bureau constituted a "disagreement," and gave basis for an action in the District Court. Westling v. U. S. (C. C. A. 9) 64 F.(2d) 464, 466. In that case Judge Mack said: "In what has been said, we have assumed that the denial of appellant's claim by the Central Board of Appeals did constitute a disagreement under the statute then in force. This court has heretofore expressly withheld judgment on that

question. U. S. v. Burleyson (1930) 44 F. (2d) 502. In view, however, of the settled practice in other courts and the clear recognition by Congress of the validity of that practice prior to July 3, 1930, we agree, as does appellee, that prior to July 3, 1930, a denial was an effective disagreement, even though not made by the Director of the Bureau. (Citing U. S. v. Hill, 62 F.(2d) 1022 (C. C. A. 8th, 1932); Roberts v. U. S., 56 F. (2d) 639 (D. C. S. D. Iowa, 1931); Mara v. U. S., 54 F.(2d) 397, 398 (D. C. S. D. N. Y. 1931); Taylor v. U. S., 57 F.(2d) 331 (D. C. M. D. N. C. 1932); 36 Op. Attys. Gen. 456, page 459)."

This court, in U. S. v. Bass, 64 F.(2d) 467, 468, reached a like conclusion. There this court, speaking through Judge Wilkerson, said:

"The language of the act as to disagreement was, prior to the amendment of 1930, general in its terms. All that was required as a condition precedent to maintaining the suit against the United States was proof of disagreement between the bureau and the claimant. The formalities as to claims and denials thereof required by the amendment of 1930 were not in the law at the time this plaintiff brought his suit. * * *

"Moreover, prior to the amendment of 1930, the statute did not provide that the disagreement must be with the director personally. The only requirement was a disagreement with the bureau. The passage of the amendment of 1930 would indicate an understanding that the statute in its original form should not be construed so as to include the requirements of the amendment of 1930."

Having concluded that the denial on June 13, 1929, of plaintiff's claim by the regional office of the bureau constituted a disagreement under the applicable statutes, we come to a real question in the case, namely, What, if any, effect did the appeal of the claimant to the Central Board of Appeals have upon the disagreement—particularly, did the appeal vacate or destroy the disagreement?

Perhaps the effect of the appeal upon the disagreement may more readily be determined if it is first determined what a disagreement is. Under the law as it existed, prior to July 3, 1930, a disagreement was a denial by the bureau of a claim for insurance benefits. It was the result of an exercise of jurisdiction by the bureau—an administrative agency, it is true, but one having power to hear and determine the issues submitted to it and to render the sentence of the law upon the facts submitted to it. Such a result of an exercise

of jurisdiction is a judgment. Daniels v. Tearney, 102 U. S. 415, 418, 26 L. Ed. 187. See, also, 1 Freeman on Judgments (5th Ed.) § 2. In the absence of a positive statute, proceedings for the review of a judgment or order do not vacate the judgment or order, unless the proceeding for review is one in which the cause is retried as upon original process. If the proceeding for review is in the nature of an ancient writ of error, merely requiring a review of errors and affirmance of the judgment, or a reversal and remanding for further trial, the judgment of the lower court is not vacated, but merely suspended, and, except in so far as its execution is stayed, it remains in force and is binding upon the parties as to any question directly decided until it is reversed or set aside. 2 Freeman on Judgments (5th Ed.) § 722; 3 Corpus Juris, p. 1261; Kansas P. R. Co. v. Twombly, 100 U. S. 78, 25 L. Ed. 550; Du Pont de Nemours & Co. v. Richmond Guano Co. (C. C. A.) 297 F. 580, 583; Ransom v. Pierre (C. C. A.) 101 F. 665, 669.

General order No. 387 of the Director of the Veterans' Bureau, dated and effective June 6, 1929, provides:

"1. Pursuant to the provisions of section 5 of the World War Veterans' Act, 1924, authority is hereby delegated to Regional Managers to effect final denial of claims for insurance benefits in accordance with the provisions of this General Order. * * *

"6. The final denial by the Regional Manager of claims for insurance benefits in accordance with the foregoing provisions of this General Order shall constitute the final action of the United States Veterans' Bureau with respect to such claims. After being notified of such final denial, if the claimant shall elect to pursue his right of appeal to the Director, in lieu of pursuing other remedies prescribed by law, his appeal will be considered in accordance with the regular established procedure governing appeals. * * *

"7. The established appellate procedure will also be followed when the claimant makes known his dissatisfaction with the previous rating board action within six months from the date written notice of such previous rating board action is mailed to him at his last address of record."

General order No. 349–A of the Director of the Veterans' Bureau, dated March 1, 1929, effective March 15, 1929, relating to procedure in rendering decisions on, adjudication of, and handling appeals on cases under the jurisdiction of the regional rating board, provides, in section 10 thereof: "Should the claimant remain dissatisfied and elect to appeal, he will be informed that his appeal must be filed in writing within six months from the date the written notice was sent to him as provided in paragraph 5 hereof, and should state his specific objections to the decisions rendered and the reasons therefor; the benefits he feels he is entitled to and the reasons therefor; *and that any additional evidence he desires to have considered must be first submitted to the Rating Board. No new, material evidence not considered by the Rating Board will be considered by the Central Board of Appeals or the Director."* (Italics supplied.)

It should be borne in mind that the District Court was not, and this court is not, called upon to determine the wisdom of the procedure provided for by general order No. 387, above quoted. All that that court was, and all that this court is, called upon to decide, is the effect of an appeal from an order of an administrative officer. The regulations above set forth were consistent with law and were well designed to carry into effect that which Congress had enacted. Accordingly, they have the force and effect of law. U. S. v. Birdsall, 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930; U. S. v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Claffy v. Forbes (D. C.) 280 F. 233; Sawyer v. U. S. (C. C. A.) 10 F.(2d) 416, 420.

The regulations promulgated by the director of the Veterans' Bureau, under the authority of the pertinent statutes, provided that, on appeal from the regional office of the bureau to the Central Board of Appeals, and from the Central Board of Appeals to the Director, no new evidence which had not been submitted to the rating board of the regional office should be received or considered; in other words, the regulations promulgated by the Director provided that the proceedings before the Central Board of Appeals and before the Director should not be new trials, but should be merely proceedings for determining whether or not error had been committed by the rating board of the regional office. This being the case, under the authorities above referred to, the judgment or order of the regional office was not vacated or set aside by the appeal therefrom. It remained in force and was binding upon the parties as to every question directly decided until it should be reversed or set aside by the Central Board of Appeals or by the Director. The only effect of the appeal was the staying of the execution of the order or judgment.

It may be said that the writer has applied

to administrative orders law which is applicable to judgments. It may be conceded that he has, but no good reason has been suggested or is perceived why the law applicable to judgments should not be applicable to administrative orders. They are both the result of the exercise of jurisdiction, of the power to hear and determine, and to give different effect to an order of an administrative board having jurisdiction from that given to the judgment of a court can lead only to confusion. In the opinion of the writer, the disagreement in question was not destroyed by the appeal to the Central Board of Appeals, but continued to exist and formed a basis for the action in the District Court. Professor Ernst Freund, in his work "Administrative Powers over Persons and Property," at page 286, says: "Considerations of equity appear to support the finality or conclusiveness of an administrative decision in favor of the individual, even though it be conceded that he may, at his option, treat it as inconclusive so far as it is unfavorable to him. This is borne out by the relative paucity of decisions discussing the principle of administrative 'res judicata' in this sense."

The writer has been unable to find in the opinion of the trial court in this case or in the opinion of the majority of this court any statement of a general principle of law of universal application which, when applied to the facts of the case, resulted in the conclusion which was reached. A conclusion has been reached and has been definitely stated, but, so far as the opinion of the trial court and the majority of this court is concerned, it stands an isolated legal conclusion unrelated to the general body of the law.

It has occurred to the writer that possibly the general principles applicable to pleas of former action pending might support the conclusion, but a careful examination of those principles discloses that they do not. If a final judgment in the former suit would support a plea of res adjudicata in the subsequent suit, the suits are identical for the purpose of a plea of former action pending, otherwise they are not. The Haytian Republic, 154 U. S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930; Watson v. Jones, 13 Wall. 679, 715, 20 L. Ed. 666. The claimant, in his proceeding in the Veterans' Bureau, was not required to prove one ultimate fact which he was required to prove in his action in the District Court. That was the fact of a disagreement. Accordingly, the actions were not identical, and the plea of former action pending would have been bad.

It may be said that the doctrine of election of remedies is the general principle which, when applied to the facts of the case at bar, will give the result arrived at by the trial court and the majority of this court. The doctrine of election of remedies is not applicable to remedies which are consistent the one with the other. Robb v. Vos, 155 U. S. 13, 43, 15 S. Ct. 4, 39 L. Ed. 52; Bierce v. Hutchins, 205 U. S. 346, 27 S. Ct. 524, 51 L. Ed. 828. The writer can see nothing inconsistent in the veteran importuning his government through the Veterans' Bureau to pay him what he claims it owes him and his suing the government in the District Court to recover what he claims the government owes him, and certainly no inconsistency has been pointed out. Even where the victim of a wrong has inconsistent remedies, and he is doubtful which is the right one, he may pursue any or all of them until he recovers through one, and, in the absence of facts creating an equitable estoppel, his prosecution of a wrong remedy to defeat will not estop him from pursuing the right one to victory. Union Central Life Ins. Co. v. Drake (C. C. A.) 214 F. 536, 548. See, also, Bierce v. Hutchins, 205 U. S. 340, 346, 27 S. Ct. 524, 51 L. Ed. 828; Corbett v. B. & M. R. R., 219 Mass. 351, 107 N. E. 60, 61, 12 A. L. R. 683.

It may be said that the doctrine applicable to estoppels, when applied to the facts in the case at bar, will give the result arrived at by the trial court and the majority of this court. But the government has not been disadvantaged by the plaintiff's appealing to the Central Board of Appeals as well as suing in the District Court, and accordingly the doctrine relating to estoppels is not applicable. Jones v. U. S., 96 U. S. 24, 29, 24 L. Ed. 644; Merrill v. Nat. Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Columbus, S. & H. R. Co. Appeals (C. C. A.) 109 F. 177, 217.

The only authority relied upon by the District Court and the majority of this court is an opinion filed December 17, 1932, in the suit of Andy Anderson v. United States, 5 F. Supp. 269, in the District Court for the Eastern District of Kentucky. There the claimant appealed to the Central Board of Appeals and then brought suit. Within a month the Veterans' Bureau made a finding in his favor. Claimant then demanded judgment in the District Court on his policy. The District Court held that the appeal annulled the operative effect of the disagreement. It seems to the writer that the weight of that decision as an authority is very greatly weakened by the fact that the only practical result of that

court's holding otherwise would have been to mulct the claimant in attorney's fees. Courts are loath to take jurisdiction when the only effect of their taking it will be to mulct the plaintiff in attorney's fees. See Mara v. U. S. (D. C.) 54 F.(2d) 397, 399.

As recently as the case of U. S. v. Bass, 64 F.(2d) 467, this court saw no inconsistency between the simultaneous maintenance of a proceeding in the bureau and a suit in the District Court. In that case, Judge Wilkerson, speaking for the court, said [page 469 of 64 F.(2d)]: "In this connection it should not be overlooked that the suit had been pending four years at the time of the trial, and that if the bureau thought the plaintiff was entitled to the insurance it could have made an award even after the suit was brought as was done in Dobbie v. U. S. (D. C.) 19 F.(2d) 656."

In the Dobbie Case, supra, Judge Hutcheson considered a state of facts which involved the simultaneous maintenance of proceedings in the bureau and in the District Court, and sustained the jurisdiction of the court.

If the District Court was without jurisdiction to try this case, the plaintiff and others similarly situated have lost all opportunity to submit their claims to the courts. This comes about through the application of "An Act to maintain the credit of the United States Government," approved March 20, 1933, 48 Stat. c. 3, p. 11, § 17 (38 USCA §§ 717, 718).

In the opinion of the writer, the judgment of the District Court should be reversed.